## BRIDGET MORAN

*v.*

## BESSIE NEVILLE et al.

[Filed November 26th, 1897.]

1. Where a husband negotiates the purchase of lands and procures the title to be placed in his wife's name, and mortgages his own other property with that bought for her to pay for the latter, and actually gives her the money raised on the mortgage, it is a complete gift to the wife, and casts upon the husband or his heirs who dispute it, the burden of proving an obligation on her part to pay back the money, or some agreement on her part that the whole debt should be charged primarily on her property, leaving the husband's liable only for the deficiency.

2. The relation of husband and wife and his conduct in so dealing with the property purchased, raise a presumption that a gift or settlement is intended, and while this presumption may be rebutted by proof, the burden is upon the party who disputes the gift.

3. In such a case the property of the husband included in the mortgage must contribute its ratable portion towards the payment of the mortgage debt.

On bill to foreclose and exceptions to master's report.

This is a bill to foreclose two mortgages held by the complainant, Bridget Moran. Her right to have a decree in accordance with the prayer of her bill is not disputed.

The questions in issue are raised by the answer and cross-bill of the defendant James N. Butterly, and by the exceptions filed in the master's report in the cause by that defendant, and affect only the equities between the defendants, the heirs of Robert Neville, and the defendant Bessie Neville, his widow.

In 1889, Robert Neville was the owner of a lot of land on Jackson street, Jersey City, and on May 20th, 1889, he mortgaged it to secure the payment of his individual bond, his wife joining in the mortgage. This mortgage will hereafter be referred to as the mortgage made in 1889.

In 1890, one Lane conveyed to Bessie Neville, the wife of

Robert Neville, another lot in Jersey City, situate on Vreeland street, or Randolph avenue.  To secure the money to pay for this lot, Robert Neville and Bessie, his wife, gave their joint and several bond to the complainant, and secured its payment by a mortgage bearing the same date as the deed conveying the lot to Mrs. Neville.  This mortgage covered not only the lot on Randolph avenue, conveyed to her, but also the Jackson avenue lot owned by Mr. Neville.  The mortgage was in the usual form, except that it contained a special clause, whereby the mortgagors had the right to pay off $1,500 of the principal of the debt, and to receive a release of the Jackson avenue property from the lien of the mortgage.  This mortgage will hereafter be referred to as the mortgage made in 1890.

It should be noted that Vreeland street and Randolph avenue are the same.

Robert Neville died in 1896, intestate, seized of the Jackson avenue lot, leaving him surviving his widow, the defendant Bessie Neville, and his heirs-at-law, the defendant James N. Butterly and others, to whom the title of the Jackson avenue lot descended.

Bessie Neville still continues to hold the title to the Randolph avenue lot.

By their terms both the mortgages came to be due because of the non-payment of interest.  The complainant filed her bill to foreclose in this case, making defendants the widow, Bessie Neville, and the heirs-at-law of Robert Neville, as owners of the Jackson street property, and Bessie Neville, in her own right, as sole owner of the Randolph avenue property.

James N. Butterly is one of the heirs of Robert Neville, and he files his answer admitting all the facts stated in the bill, but alleging that the mortgage of 1890, though given on both properties, was made to secure the purchase-money of the Randolph avenue lot to be paid by Bessie Neville, and for the purpose of obtaining money to build on it, and that the moneys so raised were so used; that the Randolph avenue lot is the separate property of Bessie Neville; that Robert Neville never had any interest in it, and that the Jackson avenue lot was included in

the mortgage of 1890, solely as collateral security to secure the mortgage debt of Bessie Neville, in the event only that the Randolph avenue premises should prove to be insufficient to pay it; and by his cross-bill against Bessie Neville, the defendant James N. Butterly further charges that the whole proceeds of the mortgage of 1890 were used by Bessie Neville for the benefit of her separate estate, Robert receiving no benefit therefrom. He insists that the Randolph avenue property should be first sold, and out of the proceeds thence arising the whole amount due on the mortgage on that property should be paid, and if there be a deficiency the Jackson avenue proceeds remaining after the payment of the mortgage of 1889 should be used to pay it, but that no proceeds from the Jackson avenue property should be used to pay the mortgage of 1890, unless there be a deficiency in the proceeds from the sale of the Randolph avenue property to pay the mortgage.

The defendant Bessie Neville answers the cross-bill, admitting that the mortgage of 1890 was made to secure the purchase-money of that property and to build on it, and that it was used for those purposes, and that she and not Robert owns it, but she denies that the Jackson avenue property was put in that mortgage solely as collateral security to secure the debt in the event only that the Vreeland street (or Randolph avenue) property should be insufficient to pay it. She then avers that Robert Neville, shortly before making the mortgage of 1890, intended to sell the Jackson avenue property and use the proceeds for the purchase and improvement of the Randolph avenue property, and to vest the title to the latter in her name; that because he could not secure a satisfactory price he determined to borrow the necessary money, and for the same purposes did borrow it and gave it to her for those purposes, and it was always his intention to sell the Jackson avenue property, and out of the proceeds to pay off the mortgage of 1890, and she insists that it is inequitable to charge the whole debt of that mortgage on the Randolph avenue premises, and to free the Jackson street premises from all liability to that debt, when both are included in that mortgage.

Moran v. Neville.

The question in dispute was referred to a master for report, who took testimony upon the disputed points, and reported that the Jackson avenue property should be first sold; to pay, first, the amount due on the mortgage of 1889 on those premises, and to pay, secondly, the sum of $1,649.50 of the amount due on the mortgage of 1890 on both lots, with five-sevenths of the costs of suit. This sum is stated by the master without indicating the sources from which he ascertained the amount to be charged. But it corresponds with the sum of $1,500 named in the mortgage of 1890 as sufficient to release the Jackson avenue property, and interest thereon from the time when interest is due by the master's report on the mortgage of 1890. The master further reports that the Randolph avenue property should be secondly sold to pay the residue of the amount due on the mortgage of 1890, with the remaining two-sevenths of the costs.

To the master's report the defendant James N. Butterly files his exceptions as to the order of sale, the defendant insisting that the Randolph avenue property, and not the Jackson avenue property, should be first sold, and that out of the proceeds the complainant should be first paid the whole amount due her on her mortgage of 1890. That the Jackson avenue property should be secondly sold, and from the proceeds should be first paid the amount of the mortgage of 1889, and if there should be any deficiency of the proceeds of the Randolph avenue property to pay the mortgage of 1890, the residue of the proceeds of the Jackson avenue property should pay it.

The substance of the excepting defendant's claim is that the Randolph avenue property should be first sold, and that no part of the proceeds of the Jackson avenue property should be paid in satisfaction of the mortgage of 1890 on both properties, unless there should be a failure of the Randolph avenue property to pay the whole amount due on that mortgage.

No exceptions were taken to the master's report on the part of the defendant Bessie Neville.

*Mr. Edward A. S. Man*, for the exceptant defendant.

*Mr. John Garrick*, for Bessie Neville, respondent defendant.

GREY, V. C.

The exceptions to the master's report are based upon the same grounds set up in the answer of the excepting defendant, Butterly. He contends that the Jackson avenue property was included in the mortgage of 1890, with the Randolph avenue property, solely as a collateral security, and that it should respond to the payment of that mortgage only in the event that the proceeds of the Randolph avenue property should be insufficient to pay it.

The attention of the mortgagors in making the mortgage of 1890 was evidently especially called to the relation of the mortgage debt to the properties mortgaged. This appears from the clause in that mortgage providing that the mortgagors should have a right to a release of the Jackson avenue property upon paying $1,500 of the principal due. Had they intended that the Jackson avenue property should only be secondly liable for the mortgage debt, it would naturally and reasonably have been expressed in the mortgage itself. It is not there found.

By the exceptant's proofs it was shown that Robert Neville, in his lifetime, negotiated the loan which resulted in the mortgage of 1890 on both the Jackson avenue property, which he owned, and on the Randolph avenue property, which he obtained to be put in the name of his wife, coincidently with the making of the mortgage. Sometimes he paid the interest on it and sometimes his wife paid it. No proof was made that there was any understanding or agreement that the mortgage of 1890 on both lots should be paid in the first instance wholly out of the Randolph avenue premises.

It is admitted by the answer that the wife, Bessie Neville, holds the title to the Randolph avenue property, and that she received the money raised by the mortgage of 1890 on both properties, and used it for improving her separate estate.

The exceptant appears to have assumed that this receipt of all the mortgage money by Mrs. Neville has operated somewhat as does a resulting trust, and has charged her property with an equity to answer first for the whole mortgage debt. But obviously this was not the intention of the parties.

The evidence for the defendant Bessie Neville is full and uncontradicted that Robert desired to dispose of the Jackson avenue property in order to have the Randolph avenue property free from liens, with the title to stand in his wife's name, so that she should have a home clear. Failing to secure a sale on advantageous terms he made the mortgage in question. He made this statement to a Mrs. Lane, and also to the mortgagee, before the mortgage was made, and in substance to the other witnesses afterwards. Robert Neville and Bessie, his wife, never had two purses; he furnished the money to pay the interest on the mortgage of 1890, which covered both properties. The checks given by the mortgagee in making the original loan are produced, and they are made payable, not to the husband, but to the wife, and as he negotiated the loan and transacted the business it is impossible to refuse to believe that he arranged and intended the Randolph avenue property to stand in his wife's name, and actually gave to her as a gift all the proceeds raised by the mortgage of 1890, which was not only on her property, but also upon his own. This was in the nature of a gift to her actually executed by the making of the mortgage and the payment of the proceeds to her. The heirs of Robert, by their contention, are now seeking to dispute his executed gift.

This testimony explanatory of the purpose and intent of Robert Neville in his dealings with the Randolph avenue property, and with the money raised by the mortgage of 1890, and his declaration regarding these matters, was objected to as incompetent.

But testimony of like character to establish a trust in the Randolph avenue property in favor of Robert Neville, by the admissions of Bessie Neville, would have been admissible had such proofs been offered. *Peer* v. *Peer, 3 Stock. 439 ; Midmer* v. *Midmer, 11 C. E. Gr. 302,* affirmed on appeal, *12 C. E. Gr. 548.* And it may be overcome by the same kind of evidence. *Peer* v. *Peer, ubi supra ; Duvale* v. *Duvale, 9 Dick. Ch. Rep. 582.* I think the evidence above recited of the contemporaneous declarations of Robert Neville is within the same principle, and was, under the authorities cited, clearly admissible to show that

by the mortgage of 1890 he intended to charge the Jackson avenue property not as an ultimate resort, but primarily, at least, to the extent of paying its fair proportion of that mortgage debt.

Irrespective of aiding proof, however, the mere fact that the husband pays the consideration for the purchase of lands, and has the conveyance made to his wife, raises a presumption that a gift or settlement is intended, and while this presumption may be rebutted by proof, the burden is upon the party who disputes the gift, and the proof must be such as would be required to establish a resulting trust. *Read* v. *Huff, 13 Stew. Eq. 234.* I think the principle is equally applicable where the husband obtains a title to be put in his wife's name, and mortgages his own property with hers to pay for it, actually giving to her the money raised on the mortgage. This completed the gift, and casts upon the heirs who assert an equity antagonistic to the gift the burden of proving that she was to pay back the money by the process of charging the whole debt on her property, and making his liable only for the deficiency. This burden the heirs have not assumed, for they have offered no evidence which shows that the Jackson avenue property should respond in payment of the mortgage of 1890, only after the Randolph avenue property is exhausted.

Neither the mortgage itself nor the parol testimony supports this contention in the least degree, and, as above shown, the presumption which arises from such dealings of a husband with a wife is also against the exceptant's contention.

The master has reported that the Jackson avenue property should be charged with the payment of $1,649.50, part of the mortgage of 1890. No exception has been taken to the report on the ground that this is a charge of an undue proportion. The exceptions are made upon the single ground that the Jackson avenue property should not respond at all until after the Randolph avenue property has first been exhausted.

I am of the opinion, and will advise, that the exceptions to the master's report have not been sustained, and should be overruled, and the report confirmed, with costs.